**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **WILLIE GLENN WARREN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 1:21-cv-00185-CWB** |
| | ) |
| **KILOLO KIJAKAZI,[1]** | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.    Introduction and Administrative Proceedings

Willie Glenn Warren ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on January 12, 2019, alleging disability onset as of December 1, 2016 due to rheumatoid arthritis, anxiety, anemia, neuropathy, gastrointestinal bleed, low back pain, prostrate, bursitis both shoulders, loss of balance, and alcoholism.  (Tr. 10, 58-59, 72).[2]  The claim was denied at the initial level on April 12, 2019, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 10, 72, 74, 82, 84).  The ALJ subsequently heard the case on August 18, 2020, at which time testimony was given by Plaintiff (Tr. 10, 39-52, 56) and by a vocational expert (Tr. 10, 52-55).  The ALJ took the matter under advisement and issued a written decision on October 21, 2020 that found Plaintiff not disabled.  (Tr. 10-22).

The ALJ's written decision contained the following enumerated findings:

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since December 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: rheumatoid arthritis and chronic liver disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to hazards like machinery and unprotected heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 12, 1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2016, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12, 15, 16, 20, 21, 22).

On January 19, 2021, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at p. 2; Doc. 12 at p. 14). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 17 & 18), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. § 405(g). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be affirmed.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted, however, simply because the court itself would have reached a result contrary to that of the

3

factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

---

[4] *McDaniel* is a Supplemental Security Income case.  Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II.  SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

III.    **Issue on Appeal**

Plaintiff raises one issue on appeal, arguing that the ALJ failed to include manipulative limitations in his RFC.  (Doc. 12 at p. 5).  The Commissioner contends that the ALJ's RFC determination is supported by substantial evidence and that Plaintiff improperly seeks to have the court reweigh the evidence.  (Doc. 13 at p. 1).

IV.    **Discussion**

Plaintiff contends that the ALJ's failure to include manipulative limitations in his RFC is not supported by substantial evidence when considering the evidence of ongoing manipulative issues in his more recent medical records.  (Doc. 12 at p. 5).  Plaintiff maintains that the ALJ largely relied on much older treatment dates, namely from 2018, in discrediting his complaints of bilateral pain, weakness, and swelling and that the ALJ's reliance on only a portion of the record medical evidence rather than the whole record was improper.  (*Id*. at pp. 5, 9, 13).  Plaintiff also contends the ALJ failed to pose a complete hypothetical to the VE that included manipulative limitations.  (*Id*. at pp. 13-14).  The Commissioner argues that the ALJ considered the entire record, including medical records from March 2019, December 2019, and January 2020, in determining Plaintiff's RFC.  (Doc. 13 at pp. 6-7).  The Commissioner asserts that the ALJ was not required to refer to every piece of evidence in the ALJ's decision so long as the decision was sufficient to show that the ALJ considered Plaintiff's medical condition as a whole.  (*Id*. at p. 7).  The Commissioner also contends that the ALJ did pose a complete hypothetical question that incorporated all the limitations from Plaintiff's RFC and that the hypothetical question referenced by Plaintiff and the answer to it were irrelevant, as the ALJ found manipulative limitations unsupported and did not include them in the RFC.  (*Id*. at pp. 10-11).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc.*

*Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."  *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, at *4 (S.D. Ala. Mar. 9, 2022).

The ALJ's decision demonstrates that the ALJ considered the entire record in concluding that Plaintiff could perform light work[5] except that: Plaintiff could "frequently climb ramps and stairs, stoop, kneel, crouch, and crawl;" Plaintiff could "occasionally climb ladders, ropes, and scaffolds;" and Plaintiff "must avoid concentrated exposure to hazards like machinery and unprotected heights."  (Tr. 16).  In determining Plaintiff's RFC, the ALJ considered Plaintiff's function report and hearing testimony in which he complained that he had a number of limitations, some of which involved lifting and using his hands.  (Tr. 17, 286-293, 304-312).  The ALJ stated that Plaintiff reported: that he quit his job off the farm and had a very limited ability to complete work on his farm; that he was unable to do many household tasks and must have assistance from his family members; and that he was unable to bait his fish or get his fish off the hook, hunt, use tools, button, and tie his shoes and that he had difficultly writing, shaving, and opening and holding things.  (Tr. 17, 47, 267, 277, 287, 290-91, 310).  The ALJ, however, noted that Plaintiff

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

could lift forty-five pounds, tend to his personal care needs, drive a tractor, bail hay, feed and give water to his cattle, do laundry, blow the leaves off his front porch with a small electric blower, and drive a car.  (Tr. 17, 44-45, 286-88, 291, 298).

As to the objective medical evidence, the ALJ considered medical records from July 13, 2018 when Plaintiff sought treatment from a rheumatologist, Edmund G. Lacour, M.D. (Tr. 17, 486).  The ALJ noted that Plaintiff reported at his examination a five-year history of joint pain, swelling, and stiffness involving his hands and fingers and: that he was unable to tie his shoelaces or go fishing, he needed two hands to hold a glass or cup, and he occasionally dropped objects; that he had difficulty using his hands for work on his farm; and that he experienced fatigue, weakness, and tingling and numbness in his extremities.  (Tr. 17, 476, 486-87).  However, Plaintiff also reported substantial improvement of his hand swelling with medication.  (Tr. 18, 486).  The ALJ stated that Plaintiff's physical examination revealed some mild swelling of his hands and fingers and decreased range of motion in his hands and fingers.  (Tr. 17, 489).  The ALJ noted that an ultrasound showed chondrocalcinosis in the right meniscal homologue without inflammation and modest synovitis in the mid-wrist without erosive features.  (Tr. 17-18, 490).  The ALJ further noted that Dr. Lacour diagnosed Plaintiff with seronegative rheumatoid arthritis and that physical examination demonstrated that Plaintiff had no swelling or tenderness at his wrists and that his elbows and shoulders were unremarkable.  (Tr. 18, 489).  Dr. Lacour found high disease activity, and to treat his conditions Plaintiff was prescribed medications and received injections.  (Tr. 18, 476, 486, 489).

The ALJ cited medical records from October 2018, which included an electromyography and nerve conduction study of Plaintiff's upper extremities showing that Plaintiff had bilateral severe carpal tunnel syndrome (right worse than left) and bilateral cubital tunnel syndrome.

(Tr. 13, 459).  The ALJ stated that despite treatment Plaintiff reported morning pain and stiffness, hand swelling, and loss of balance.  (Tr. 18, 476).  The ALJ noted that in November 2018 Plaintiff underwent right carpal tunnel syndrome and cubital tunnel syndrome surgery and that Plaintiff showed significant improvement (mild inflammation in right wrist).  (Tr. 13, 473, 491).  The ALJ cited records from December 11, 2018, which reflected that Plaintiff's rheumatoid arthritis disease activity was low and that Plaintiff had a good prognosis for the condition.  (Tr. 18, 475).  Plaintiff reported improved upper extremity pain after carpal tunnel and cubital tunnel surgeries.  (Tr. 18, 475).

The ALJ cited medical records from January and March 2019 indicating that Plaintiff underwent left carpal tunnel syndrome and cubital tunnel syndrome surgery in January 2019 and that he reported significant improvement in pain as a result of the surgery.  (Tr. 13, 493, 589). The ALJ noted that diagnostic images from March 2019 showed Plaintiff's synovitis resolved and there continued to be no erosive disease.  (Tr. 18, 593).  The ALJ also cited records from December 19, 2019, which reflected that Plaintiff's rheumatoid arthritis disease activity was low and again noted a good prognosis for the condition—notwithstanding that Plaintiff reported morning pain and stiffness and swelling in his hands.  (Tr. 18, 746, 748).

As for medical opinions and prior administrative medical findings, the ALJ considered the January 2020 Clinical Assessment of Pain and Physical Capacities Evaluation completed by Plaintiff's physician, Justin Hovey, M.D.  (Tr. 19, 688-89).  The ALJ noted that Dr. Hovey indicated that Plaintiff had rheumatoid arthritis and severe liver disease.  (Tr. 19, 694).  The ALJ stated that Dr. Hovey opined that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work and that physical activity—such as walking, standing, sitting, bending, stooping, moving of extremities, etc.—would greatly increase Plaintiff's

pain to such a degree as to cause distraction from tasks or total abandonment of task.  (Tr. 19, 688).

Dr. Hovey also found that Plaintiff was not able to perform sedentary work and was unable to

complete an eight-hour workday.  (Tr. 19, 689).  The ALJ stated that Dr. Hovey noted that Plaintiff

was limited due to pain in his hands and joints because of rheumatoid arthritis, that he was not able

to grip very well and was limited to sitting mostly because of the joint pain, and that he was not

able to type because of the hand pain.  (Tr. 19, 694).  Dr. Hovey opined that as to gross

manipulation Plaintiff was limited to "never" and as to fine manipulation he was limited to

"occasionally."  (Tr. 689).

The ALJ found Dr. Hovey's opinion as less than persuasive, stating that the opinion was

more restrictive than warranted by the record.  (Tr. 19).  The ALJ explained that the opinion

appeared to be based partially on Plaintiff's own reports and that the opinion was neither supported

by Dr. Hovey's own examination of Plaintiff—showing that he was healthy appearing, ambulated

normally with normal range of motion, and had normal strength—nor consistent with the other

medical evidence of record.  (Tr. 19, 693-94).

The ALJ also considered the opinion of the State agency medical consultants who opined

that Plaintiff was capable of performing a range of light work with postural and environmental

limitations, but no push or pull or manipulative limitations.  (Tr. 19, 58-59, 63, 66-67, 621).

Medical records considered by the State agency medical consultants included records from

March 12, 2019 from Dothan Medical Associates indicating that Plaintiff's bilateral hand use was

normal.  (Tr. 19, 63).  The ALJ also cited a medical evaluation signed by Robysina James, M.D.

on June 18, 2019 that stated there was no new evidence that would support a change in the

assessment made by the State agency medical consultants on April 8, 2019.  (Tr. 19, 621).  The

ALJ found the State agency medical consultants' opinion persuasive as it was consistent with the record evidence. (Tr. 19).

Plaintiff asserts that the ALJ failed to consider other medical findings not noted in the ALJ's decision. (Doc. 12 at p. 10). Plaintiff cites to medical records from September 24, 2019 for a follow up visit Dr. Lacour for seronegative rheumatoid arthritis. (Tr. 750). The records show that despite some improvement with Enbrel,[6] Plaintiff complained of significant morning stiffness in his hands and persistent joint pain. (Tr. 750). Inspection revealed 28 joint count abnormalities. (Tr. 752). Plaintiff's Enbrel was discontinued, and Humira[7] was prescribed. (Tr. 752). Dr. Lacour's assessment of Plaintiff's rheumatoid arthritis was "high disease activity, one mildly swollen joint" and "[a]lthough responsive to Enbrel he continues to be symptomatic." (Tr. 752). Dr. Lacour noted: "Good prognosis is documented for RA." (Tr. 752). Plaintiff also cites records from December 19, 2019, which were in fact referenced in the ALJ's decision. (*See* Tr. 13, 18, 746, 748).[8] In addition to that evidence discussed by the ALJ, Plaintiff

---

[6] Enbrel (etanercept) is a monoclonal antibody that is used as an injection to block inflammation in helping with symptoms of certain types of arthritis and skin conditions. *See* https://www.goodrx.com/enbrel/what-is (last viewed April 14, 2023).

[7] Adalimumab (Humira) is a biologic drug that is injected to reduce the signs and symptoms of moderate to severe rheumatoid arthritis, such as joint swelling, pain, and fatigue. *See* https://www.hopkinsarthritis.org/patient-corner/drug-information/adalimumab-humira/ (last viewed April 14, 2023).

[8] Plaintiff also cites Dr. Hovey's treatment notes and opinion, (Doc. 12 at pp. 10-12), which the ALJ clearly discussed (Tr. 19, 688-89, 693-94). Plaintiff further references that Dr. Hovey said he usually did not fill out disability paperwork as that was typically best left to an expert physician in disability, but that he believed Plaintiff was truly disabled and should not work based on his risks of death. (Doc. 12 at p. 11, citing Tr. 694). However, the ALJ was not required to consider this statement, as it constitutes a conclusion reserved to the agency. *See, e.g., Clark v. Kijakazi*, No. 3:21-CV-02, 2022 WL 3756908, at *4 (M.D. Ala. Aug. 30, 2022); *Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017) ("A medical opinion that a claimant is disabled constitutes an opinion on an issue reserved to the Commissioner and is not controlling."). Only the agency is "responsible for making the determination or decision about whether [a claimant]

asserts that the records also showed widespread tenderness but no swollen joints.  (Tr. 748).  Lastly, Plaintiff cites medical records from May 26, 2020, when he presented to Dr. Lacour for a follow-up for seronegative rheumatoid arthritis.  (Tr. 742).  Plaintiff reported improvement with Humira but stated that it was not effective until two days after his injection and that his symptoms returned two days prior to his next injection.  (Tr. 742).  Plaintiff reported pain and stiffness in his hands and shoulders, though he did report improvement in pain since starting Cymbalta.[9]  (Tr. 742). Dr. Lacour increased his Humira to weekly.  (Tr. 744).

Based upon the totality of the evidence, the court concludes that the ALJ properly considered the entire record in determining Plaintiff's RFC and that the ALJ's determination was supported by substantial evidence.  The ALJ thoroughly discussed the medical evidence and properly considered the factors of supportability and consistency in assessing the opinion evidence. *See* 20 C.F.R. § 404.1520c(a) ("The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency.").  The ALJ was not required to discuss every piece of evidence in the record, and the ALJ's decision showed that the ALJ considered Plaintiff's medical condition as a whole.  *Coley*,

---

meet[s] the statutory definition of disability."  *See* 20 C.F.R. § 404.1527(d)(1).  "A statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that [the agency] will determine that [the claimant is] disabled."  *Id*.; 20 C.F.R. § 404.1520b(c)(3) ("[W]e are responsible for making the determination or decision about whether you are disabled"); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge … is responsible for assessing your residual functional capacity").  The regulations even expressly provide that the agency "will not provide any analysis about how [it] consider[s] such evidence" because it "is inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled … under the Act."  20 C.F.R. § 404.1520b(c).

[9] Duloxetine (Cymbalta) "is used to treat depression and anxiety.  In addition, duloxetine is used to help relieve nerve pain (peripheral neuropathy) in people with diabetes or ongoing pain due to medical conditions such as arthritis, chronic back pain, or fibromyalgia (a condition that causes widespread pain)."  *See* https://www.webmd.com/drugs/2/drug-91491/cymbalta-oral/details (last viewed April 14, 2023).

771 F. App'x at 917; *Dyer*, 395 F.3d at 1211. The evidence to which Plaintiff cites does not undermine the ALJ's determination. Plaintiff "'must do more than point to evidence in the record that supports h[is] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'" *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185, at *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam)) (brackets added). "The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence." *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (citing *Crawford*, 363 F.3d at 1158-59); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted). Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

Plaintiff further contends that the ALJ failed to pose a complete hypothetical question to the VE. (Doc. 12, at p. 14). Specifically, Plaintiff asserts that the ALJ's only hypothetical question to the VE, which contained manipulative limitations, also included a limitation of "two

14

unscheduled breaks of at least 30 minutes at a time in addition to normal breaks," but that the VE's answer only addressed the issue of unscheduled breaks—thus giving no insight as to the effect of any manipulative limitations on Plaintiff's ability to perform work activity.  (*Id*. at pp. 13-14, citing Tr. 55).  "'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002)).  However, the "hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant."  *Id*. (internal citation omitted).  Moreover, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  *Crawford*, 363 F.3d at 1161; *Zoslow v. Comm'r of Soc. Sec.*, 778 F. App'x 762, 764 (11th Cir. 2019).

Here, Plaintiff's argument is irrelevant.  As explained above, the ALJ found that any manipulative limitations were unsupported by the record and therefore did not include them in the RFC.  (Tr. 16, 20).  And the ALJ did pose a complete hypothetical question that properly incorporated all the limitations from Plaintiff's RFC:

> Let's assume a hypothetical individual of [Plaintiff's] age and education and with the past jobs you described. Further assume that this individual is limited to a light exertional level with the additional limitations of frequently climbing ramps and stairs; frequently stooping; frequently kneeling, crouching, crawling; occasionally climbing ladders ropes and scaffolds; occasionally – I'm sorry. Avoiding concentrate exposure to hazards like machinery and unprotected heights.

(Tr. 54; Tr. 16).  Accordingly, this argument is without merit.

## V.   Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.  A separate judgment will issue.

**DONE** this the 27th day of June 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**